NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MCKESSON CORPORATION,<br><br>                Plaintiff,<br><br>    v.<br><br>JANAKIRAM AJJARAPU,<br><br>                Defendant. | Civ. No. 18-4132<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon the Motion for Summary Judgment filed by Plaintiff McKesson Corporation. (ECF No. 26.) Defendant Janakiram Ajjarapu opposes. (ECF No. 32.) The Court has decided the Motion based on the written submissions of the parties, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion is granted.

## **BACKGROUND**

In this case, Plaintiff seeks payment from Defendant for amounts due from some commercial dealings. Plaintiff, a pharmaceutical distributor, sold goods to Park Irmat Drug Corporation ("Irmat") and Gideon Drug Inc. ("Gideon") on credit. (Def.'s Stmt. of Undisputed Material Facts ("DSUMF") ¶ 2, ECF No. 39; Def.'s Resp. to Pl.'s SUMF ("RSUMF") ¶¶ 4–5, ECF No. 40.) On September 30, 2016, Defendant purchased Irmat and Gideon and from their previous owner. (DSUMF ¶ 1; Securities Purchase Agrmt., ECF No. 32-2.) At that time, Irmat and Gideon together owed $8,567,888.60 to Plaintiff. (DSUMF ¶ 6; Irmat Balance Sheet at 2, ECF No. 32-2; Gideon Balance Sheet at 2, ECF No. 32-2.)

1

On October 12, 2016, Plaintiff and Irmat signed a Customer Application providing terms of purchase. (RSUMF ¶ 4; Irmat Customer Appl., ECF No. 26-3.) That Customer Application included the following personal guarantee[1] of Defendant:

> [Defendant] hereby jointly and severally guarantees to [Plaintiff] that [Irmat] will fully and promptly perform and pay all its present and future obligations to [Plaintiff], whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with [Plaintiff] or otherwise acquired by [Plaintiff]. This guaranty applies to all of [Irmat]'s obligations to [Plaintiff], even if such obligations are invalid or unenforceable against [Irmat] for any reason and even if any security for such obligations is insufficient, invalid, unenforceable or not perfected.

(Irmat Customer Appl. at 2.) On the same day, Gideon also executed a Customer Application with Plaintiff containing an identical personal guarantee of Defendant. (RSUMF ¶ 5; Gideon Customer Appl. at 2, ECF No. 26-4.) Two other companies—Buena Care Pharmacy Inc. ("Buena Care") and 520 Franklin Avenue Pharmacy Inc. ("520 Franklin")—also executed Customer Applications containing the same personal guarantee of Defendant. (RSUMF ¶¶ 6–7; Buena Care Customer Appl. at 2, ECF No. 26-5; Franklin Customer Appl. at 2, ECF No. 26-6.)

Defendant claims that his personal guarantee applied only to liabilities arising *after* he acquired Irmat and Gideon, not liabilities accrued under past ownership. (Def. Decl. ¶¶ 10–11.) He also claims that Plaintiff "coerced and forced [him] to convert the outstanding liability with the prior owner . . . under [his] personal guarantee." (*Id.* ¶ 17.) Specifically, Plaintiff allegedly "threatened that if [Defendant] refused to . . . personally guarantee the prior owner[']s outstanding debt, [Plaintiff] would stop supplying the products to Irmat & Gideon." (*Id.* ¶ 18.)

---

[1] There is a legal distinction between a surety contract and a guaranty contract. *Cruz-Mendez v. ISU/Ins. Servs. of S.F.*, 722 A.2d 515, 521–22 (N.J. 1999). The Court uses the term "guarantee" here because it is used by the parties, not because of any legal determination as to the nature of the contract.

Moreover, according to Defendant, Plaintiff "is the largest pharmaceutical distributor in the US with a majority if not the highest market power." (*Id.* ¶ 19.) Thus, Defendant argues that he "was forced" to agree to the guarantee or else face the loss of his business. (*Id.* ¶ 20.)

On March 10, 2017, Irmat and Gideon's outstanding debt was converted into negotiable promissory notes. (RSUMF ¶ 9; Promissory Notes, ECF No. 26-7.) These notes granted Plaintiff a security interest, provided for computation of interest on the debt, and stipulated a monthly payment plan. (Promissory Notes ¶¶ 1, 2, 4.) Subsequently, only one payment was made on the principal of each note, which occurred on May 1, 2017. (RSUMF ¶¶ 22–23; Payment Summary, ECF NO. 26-15.) Currently, Irmat owes $3,609,072.09 in principal and Gideon owes $4,582,937.52 in principal on the promissory notes. (RSUMF ¶ 22; Payment Summary.) On September 11, 2017, Plaintiff demanded payment from Defendant. (RSUMF ¶ 16; Letter, ECF No. 26-12.)

Buena Care and 520 Franklin are also in debt to Plaintiff. After collateral sales on some of these entities' property, Buena Care owes $65,214.42 and 520 Franklin owes $483,235.03. (RSUMF ¶¶ 14, 18–21; Invoices, ECF Nos. 26-9, 26-10; Credit Bids, ECF No. 26-14.)[2]

In total, then, Plaintiff is owed $8,740,459.06 from Irmat, Gideon, Buena Care, and 520 Franklin. (*See* RSUMF ¶ 26.) Because of the personal guarantees contained in the Customer Applications, Plaintiff seeks this sum from Defendant in the present suit. (*See* Proposed Order,

---

[2] Defendant disputes these totals because Plaintiff applied Defendant's payments to debts of Irmat and Gideon that accrued prior to Defendant's purchase of these entities. (RSUMF ¶ 14; DSUMF ¶¶ 14–19.) Defendant argues that these payments should have been applied towards debts incurred after his purchase of Irmat and Gideon. (RSUMF ¶ 14; DSUMF ¶¶ 14–19.)

3

ECF No. 26-16.)[3] The Complaint was filed on March 23, 2018, asserting claims for (1) breach of contract—guaranty (Compl. ¶¶ 16–18, ECF No. 1), (2) money due (*id.* ¶¶ 19–21), and (3) account stated (*id.* ¶¶ 22–24).

Plaintiff filed the Motion for Summary Judgment on May 28, 2019. (ECF No. 26.) Defendant opposed on July 1, 2019. (ECF No. 32.) Plaintiff had inadvertently failed to submit a Statement of Undisputed Material Facts ("SUMF"), as required by Local Civil Rule 56.1(a), with its moving papers (*see* Pl.'s Letter, ECF No. 33), so Plaintiff filed its SUMF (ECF No. 35) along with its reply brief (ECF No. 36) on July 16, 2019. Defendant then filed a Response to Plaintiff's SUMF (ECF No. 40) as well as its own SUMF (ECF No. 39) on July 29, 2019. The Court denied Plaintiff's request to respond to Defendant's SUMF. (ECF No. 42.) The Motion is presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d

---

[3] The Proposed Order also includes "prejudgment interest from March 23, 2018[] and statutory costs," but Plaintiff's briefing does not make any argument for these remedies. (*See* Mot. at 5–7, ECF No. 26-1.)

4

303, 307 n.2 (3d Cir. 1983). Consequently, "[s]ummary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (citing *Anderson*, 477 U.S. at 248).

In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## **DISCUSSION**

Breach of contract requires "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *see also Allied Bldg. Prods. Corp. v. J. Strober & Sons, LLC*, 97 A.3d 1169, 1175–76 (N.J. Super. Ct. App. Div. 2014) ("[C]ontracts creating secondary obligations are to be interpreted by the same standards that apply to interpretation of contracts generally." (internal citation omitted)).[4]

In this case, Defendant is liable for breach of contract. Defendant signed Customer Applications in which he personally guaranteed "all . . . present and future obligations" that the four businesses owed to Plaintiff. (Irmat Customer Appl.; Gideon Customer Appl.; Buena Care Customer Appl.; 520 Franklin Customer Appl.) The four business entities have failed to pay

---

[4] The parties seem to assume that New Jersey law applies (*see* Mot. at 5–6), and the Court will follow suit.

5

those obligations, and Defendant is now being asked to pay them. There are no genuine disputes as to any of these facts.

Defendant's two arguments advanced in his papers are unpersuasive. First, Defendant argues that he only guaranteed liabilities that incurred *before* he purchased Irmat and Gideon. (*See* Opp'n at 3–4, 6; Def. Decl. ¶¶ 10–11.) But that is contrary to the language of the Customer Applications, wherein Defendant "guarantee[d] to [Plaintiff] that [Irmat and Gideon] will fully and promptly perform and pay all [their] *present and future* obligations to [Plaintiff]." (Irmat Customer Appl. at 2; Gideon Customer Appl. at 2 (emphasis added).) So Defendant was liable not only for future debts that the companies would accumulate, but also for then-present debts, including those that had originated before he bought the companies. This argument therefore fails.

Second, Defendant claims that Plaintiff's market power, combined with Plaintiff's threat that it would not supply products to Defendant if he did not agree to personally guarantee his company's debts, constitute duress. (Opp'n at 4–6; Def. Decl. ¶¶ 17–20.) Even assuming that these circumstances amount to duress under New Jersey law, the only proof Defendant has provided is his own Declaration. (Def. Decl. ¶¶ 17–20.)[5] The Court has no evidence on which to base a conclusion that Plaintiff had significant market power or that Defendant had no reasonable alternative but to do business with Plaintiff. And without some evidence as to market power or other wrongful pressure, it is not coercive for Plaintiff to insist on a particular contract term and

---

[5] Defendant's Opposition Brief states that "[Plaintiff's] market power accounts for over 35% of the market share for these pharma [*sic*] products. If [Plaintiff] suddenly decides to stop selling to Defendant because Defendant is not assuming the prior owner's debts under Defendant's personal guarantees, Defendant would be out of business." (Opp'n at 6.) Defendant does not include any citations, nor do Defendant's attached exhibits provide any support for these statements.

6

threaten to walk away if that term is not included. *See Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1176 (N.J. 1983) (noting that a party "was not obligated to do further business with the party claiming duress"). This argument also fails.[6]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted. An appropriate Order will follow.

Date:  8/8/19                                                                          */s/ Anne E. Thompson*
                                                                                          ANNE E. THOMPSON, U.S.D.J.

---

[6] Summary judgment in favor of Plaintiff on its other claims (money due and account stated) would be duplicative of the judgment under the breach of contract claim, so the Court will not address these remaining claims.